UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ECONUGENICS, INC.,

    Plaintiff,

v.

BIOENERGY LIFE SCIENCE, INC.;
CHENGZHI LIFE SCIENCES COMPANY,
LTD.; and ZHEJIANG GOLD KROPN
BIOTECHNOLOGY CO., LTD,

    Defendants.

Case No. 17-cv-5378 (JNE/DTS)

ORDER

---

Steven Kelber, Esq., The Kelber Law Group, 1875 Eye Street N.W., Suite 500, Washington, D.C. 20006, and Taylor Sztainer, Esq., Moss & Barnett, PA, 150 South Fifth Street, Suite 1200, Minneapolis, MN 55402, for Plaintiff

David Swenson, Esq., Larkin Hoffman Law Firm, 8300 Norman Center Drive, Suite 1000, Minneapolis, MN 55437, for Defendant Bioenergy Life Science, Inc.

---

## INTRODUCTION

Plaintiff ecoNugenics, Inc. moves to amend its dismissed patent infringement complaint against Defendant Bioenergy Life Science, Inc. to assert claims of direct infringement. Previously, ecoNugenics alleged inducement to infringe and contributory infringement but did not adequately plead direct infringement by Bioenergy. ecoNugenics now seeks to cure its deficient allegation of direct infringement by making allegations that directly conflict with admissions it made in the original complaint, rendering the proposed amendment futile and in bad faith. Accordingly, the motion to amend is denied.

**FACTS**

ecoNugenics owns six United States Patents relating to the administration of Modified Citrus Pectin (MCP) to mammals, particularly humans, to treat various medical conditions. Compl., Dkt. No. 1. The six patents comprise two distinct groups. The first group, U.S. Patent Nos. 6,642,029, 7,026,302, and 7,452,871, relates to a method of administering MCP to treat conditions caused by agents circulating in the blood such as poisonous heavy metals and environmental toxins (the "Heavy Metals Patents"). *Id.* Exs. A, B, C, Dkt. Nos. 1-1, 1-2, 1-3. The Heavy Metals Patents teach a composition and method of administration of MCP to bind with the toxic agents circulating in the blood. *Id.* The second group of patents, U.S. Patent Nos. 8,426,567, 9,427,449, and 9,649,329, relates to methods of selecting patients or administering to them MCP to treat various conditions such as inadequate immune function, inflammation, and fibrosis (the "Selecting and Administering Patents"). *Id.* Exs. D, E, F, Dkt. Nos. 1-4, 1-5, 1-6.

In its initial complaint, ecoNugenics alleged that Bioenergy, a wholly owned subsidiary of Chengzhi Life Sciences Company with its principal place of business in Ham Lake, Minnesota, imports, promotes, and sells MCP to the public for use in treating various medical conditions, including but not limited to those conditions referenced in ecoNugenics' patents. *Id.* ¶ 3, Dkt. No. 1. ecoNugenics filed this action in December 2017 asserting Bioenergy directly and indirectly infringed its six patents. *Id.* In its complaint ecoNugenics alleged that while MCP *per se* is not patentable, methods of administering it to patients are patentable; thus, Bioenergy induced infringement of the patents in suit in the following manner:

> MCP does not require a prescription or a Doctor's support. Accordingly, individuals have purchased the inferior MCP made available by BLS and administered it to themselves for . . . detoxification of toxins and heavy metals, enhancing immune support, reducing inflammation . . . , reducing fibrosis . . . and the like. These individuals infringe the claims of the ecoNugenics' patents with the inducement and contribution of BLS, Chengzhi, and Gold Kropn.[1]

*Id.* ¶ 27.

In addition, ecoNugenics alleged in its original complaint that "[c]omparative testing by qualified laboratories confirmed that … the [MCP sold by] the Defendants is 'certainly not MCP with the ability to enter mammalian circulation and bind heavy metals and galectin-3 in the blood.'" *Id.* ¶ 17.

On March 22, 2018 Bioenergy[2] moved to dismiss ecoNugenics' complaint against it, arguing, *inter alia,* that the complaint failed to plead any plausible patent infringement claim because the allegations in paragraph 17 conclusively established non-infringement and those in paragraph 27 asserted only indirect infringement. The Court agreed and by Order dated September 4, 2018 dismissed the complaint against Bioenergy:

> The allegation [in paragraph 17] that the sample of Bioenergy's product that was tested is not MCP with the ability to enter mammalian circulation and bind heavy metals and galectin-3 in the blood renders ecoNugenics's infringement claims implausible.

---

[1] This initial factual assertion only clearly alleges indirect infringement of the patents by Bioenergy; in its legal claims, however, ecoNugenics' original complaint purported to also plead direct infringement by Bioenergy.

[2] Bioenergy was the only named defendant to move for dismissal because it was the only defendant who had been served with ecoNugenics' complaint. *See* Motion to Dismiss, Dkt. No. 27.

Order at 13, Dkt. No. 52. That is, because Bioenergy's MCP could not perform the function of entering mammalian blood circulation and binding heavy metals and galectin-3 as claimed by the six patents, there could be no infringement.

The Court further noted that:

> In addition, the asserted patents recite administration of modified pectin. ecoNugenics alleged that the purchasers of Bioenergy's product administer the product to themselves.

*Id.* Accordingly, the Court held there was no plausible claim of direct infringement by Bioenergy, and because direct infringement is predicate to the claims of contributory or induced infringement, ecoNugenics also failed to allege against Bioenergy any plausible claim of indirect infringement.[3] *Id.* at 13-15.

Shortly thereafter, on September 24, 2018 ecoNugenics filed a separate action alleging infringement of the same six patents by the same defendants based on the same product. This action, No. 18-cv-2733, was randomly assigned to a different District Judge and a different Magistrate Judge than were assigned to the original action. In the new complaint (FAC)[4] ecoNugenics unequivocally alleged direct infringement by Bioenergy, deleting the factual allegations in paragraphs 17 and 27 on which its prior complaint had foundered and replacing them with new allegations. FAC ¶¶ 20, 31, Dkt. No. 57. Specifically, paragraph 20 of the FAC (apparently included in lieu of paragraph 17 in the original complaint, which had alleged that independent testing demonstrated Bioenergy's

---

[3] Because the Court found that ecoNugenics had failed to plausibly plead infringement, it declined to address Bioenergy's claim that the asserted patents were invalid as claiming non-patentable subject matter, and denied ecoNugenics' motion for summary judgment on the question of patentable subject matter. *Id.* at 15-16.

[4] For ease of reference and clarity, this complaint will be referred to as the First Amended Complaint (FAC).

MCP could not enter mammalian circulation and bind heavy metals and galectin-3) asserted that:

> Each of the patents asserted in this suit discloses that the MCP may be administered to patients as recited in the claims through different methods . . . . While oral administration is generally preferred . . ., being able to administer the MCP intravenously, or through other methods, allows the administration of MCP of varying character for the purpose of treating a mammal such as a human for conditions such as immune support, toxin elimination, reduction or inhibition of fibroses, reduction or inhibition of inflammation and the like. MCP products are provided by . . . BLS in dosage formats intentionally prepared to encourage administration and self-administration of MCP by customers of BLS.

In addition, paragraph 31 of the FAC, seemingly a replacement to the prior paragraph 27, alleged that Bioenergy "directly infringes the claims of the asserted patents by administering and providing MCP to others for the purposes recited in the claims of the asserted patents and induces infringement by other direct infringers." That is, paragraph 31 of the new complaint utilized a different definition of the term "administer" to support its allegation of direct infringement by Bioenergy. Whereas the original complaint alleged that Bioenergy's customers administered the MCP to themselves, the FAC alleged that Bioenergy also "administered" MCP by selling it to those customers. Thus, this allegation in the FAC used the term "administer" to mean "make available", thereby changing the essential nature of the allegation of direct infringement.

Because the September 4, 2018 Order granting Bioenergy's motion to dismiss had not disposed of the entire action, the FAC was treated as a related case to the original action and re-assigned to the original District and Magistrate Judges. *See* Dkt. No. 53. Once it was reassigned, the Court directed that the FAC be filed as an amended complaint and ordered that it be consolidated with the original action. *See* Dkt. Nos. 54, 56. Because

5

it was deemed an amended complaint and because no leave to file an amended complaint had been sought or received, the Court *sua sponte* dismissed the FAC and denied as moot Bioenergy's pending motion to dismiss that complaint. Dkt. No. 56.

Then, on December 17, 2018 ecoNugenics moved for leave to file a Second Amended Complaint (SAC) under Fed. R. Civ. P. 15.[5] The proposed SAC further changed the claims of infringement and the supporting allegations regarding administration of MCP and its alleged efficacy. To begin, the SAC asserts only five of the six patents that were asserted in the original complaint and the FAC, dropping all claims alleging infringement of the '302 Patent. More importantly, ecoNugenics radically overhauled its factual allegations as to administration, patient selection, and efficacy. Regarding efficacy, ecoNugenics' SAC alleges "[t]he MCP provided by [Bioenergy] is consistent with recited requirements [i.e. molecular weights of the compounds] of the ecoNugenics patents" and that Bioenergy provides its MCP "in an amount . . . sufficient to achieve the recited relief . . . ," but omits any reference to its prior factual allegation that independent testing had demonstrated that Bioenergy's MCP could not in fact perform the function of entering the bloodstream and binding to heavy metals and galectin-3.

Similarly, the SAC offers a new and different allegation regarding administration of MCP by Bioenergy. Throughout the SAC ecoNugenics alleges that Bioenergy

---

[5] ecoNugenics' motion fails to comply with Local Rule 15.1 because, though counsel filed a redlined version of the proposed SAC, it was redlined against the dismissed FAC rather than against the original "operative complaint." This failure to comply with Local Rule 15.1 is consequential because it frustrated the Court's ability to directly compare the proposed SAC with the dismissed original complaint, thereby obscuring the fundamental inconsistencies between the original allegations and the proposed new allegations which were intended to cure those defects.

"administers" MCP by "providing" it (i.e. selling it, making it available) to consumers: "administration may amount to no more than simply providing the composition - that is a proper understanding of the term 'administering' as it appears in the asserted patents herein." SAC ¶ 18, Dkt. No. 63-1. This usage is ubiquitous in the SAC.

Finally, the SAC asserts Bioenergy infringes the Selecting and Administering Patents, employing a similar semantic device. The SAC alleges Bioenergy "selects" patients for administration of MCP through its advertising and promotion that targets persons who might think they will benefit from taking MCP given its alleged health benefits.

Bioenergy opposes ecoNugenics' motion to amend, arguing it is untimely, futile, and brought in bad faith.

## ANALYSIS

**I.  Rule 15 Standard.**

Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint once as a matter of right if the amendment is made within a specified time. Thereafter, a party may amend its complaint only upon consent of the opposing party or upon leave of court, which leave "shall be freely given." Fed. R. Civ. P. 15(a)(1) and (2). A court may properly deny leave to amend only in limited circumstances such as when the amendment will cause or is the result of "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith,* 477 F.3d 540, 544 (8th Cir. 2007). In this case, there is no claim of dilatory motive, repeated failure to cure pleading deficiencies, or undue prejudice. Bioenergy asserts, however, that the Court should deny the

amendment because it is untimely, futile, and brought in bad faith. Each of these grounds is analyzed below.

## II. Undue Delay.

Bioenergy argues that ecoNugenics' motion is untimely, stressing that it was filed over eleven months after the original complaint, almost ten months after Bioenergy filed its initial motion to dismiss, eight months after the hearing on that motion, and 76 days after this Court issued its order dismissing that original complaint. Brief in Opposition at 9-10, Dkt. No. 68. Though true, these facts are largely irrelevant to the determination of undue delay. It is not unusual nor inappropriate for a party facing a Rule 12 motion to dismiss to await the outcome before seeking leave to file an amended complaint. Though this approach inevitably causes delay, it does not cause *undue* delay, as awaiting the outcome of the motion may avoid the necessity for amendment altogether or, if the motion is granted, will likely provide guidance to the amending party that will streamline any further amendment process. Thus, in this Court's estimation, the time clock by which to measure ecoNugenics' delay began to run when the Court granted Bioenergy's first motion to dismiss on September 4, 2018. Order, Dkt. No. 52.

The events since that date show reasonable diligence by ecoNugenics in attempting to amend its original complaint. Twenty days after the Court issued its order, ecoNugenics filed the FAC that was plainly intended to cure the pleading deficiencies of its original complaint. Bioenergy implicitly argues this FAC should be ignored for purposes of determining undue delay because it was obviously improper and therefore could only have been filed in bad faith. Though the Court does not countenance and cannot explain ecoNugenics' unorthodox procedure in purporting to start an entirely new action, the fact

that it filed the FAC so soon after the Court's order dismissing the complaint against Bioenergy, and that it filed the present motion to amend a mere 21 days after the Court *sua sponte* dismissed the FAC without prejudice, belies the suggestion of a lack of diligence in pursuing the amendment (even if it *does* suggest some level of disorganization or possibly even duplicity).

ecoNugenics filed its motion to amend within 21 days of the Court's unambiguous message that it need do so and before discovery has been commenced. On these facts, the Court will not deny the motion on the basis of undue delay.

### III. Bad Faith.

Bioenergy also argues that the motion to amend should be denied due to ecoNugenics' bad faith, one of the recognized bases for denying a motion to amend under Rule 15(a). *See Foman v. Davis*, 371 U.S. 178, 182 (1962). While cases construing Rule 15 recognize that a court may deny amendment when a party has acted in bad faith, the number of decisions addressing bad faith in the Rule 15 context are relatively few and far between. This Court is aware of no such decision in this District specifically construing "bad faith" in the Rule 15 context, and neither party has cited one.

One leading case on this issue is *Wizards of the Coast LLC v. Cryptozoic Entertainment LLC,* 309 F.R.D. 645 (W.D. Wash. 2015). In *Wizards,* the plaintiff moved to file a second amended complaint to include allegations of indirect infringement. The defendant objected, claiming bad faith both because the plaintiff had been aware of the factual basis on which to amend its complaint for a considerable period before seeking to amend, and because the plaintiff allegedly made conflicting statements to the court about the state of its knowledge. 309 F.R.D. at 651. The court granted the motion to amend

9

finding that "delay alone does not amount to bad faith." *Id.* Rather, bad faith is a subjective inquiry that requires proof that the moving party acted "with intent to deceive, harass, mislead, delay, or disrupt". *Id.*

Thus, bad faith requires more than mere negligence or bad judgment; it is the "conscious doing of a wrong because of dishonest purpose or moral obliquity." *Id.; see also United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003) (same, quoting Black's Law Dictionary); *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (same); *Fresno Unified School Dist. v. K.U. ex rel. A.D.U.,* 980 F. Supp. 2d 1160, 1178 (E.D. Cal. 2013) (bad faith includes seeking to amend to prolong litigation by adding baseless legal theories, to harass the opposing party, or to assert allegations so false as to constitute a fraud and willful imposition on the dignity of the court).

Given the liberal policy favoring amendment of pleadings so as to decide cases on their merits, the burden of demonstrating bad faith falls upon the party opposing amendment. *See Wizards*, 309 F.R.D. at 649. The Court therefore indulges all reasonable inferences in favor of allowing the amendment and imputes benign motives to the moving party whenever it is plausible to do so. *See id.*

Bioenergy alleges that ecoNugenics embarked upon an elaborate scheme to gain unfair tactical advantage and conceal from the Court the true nature of its factual amendments. It did so by improperly filing its FAC as an entirely new action in order to obtain a different judicial assignment and to conceal from the new judge the fact that the FAC's factual allegations were wholly inconsistent with ecoNugenics' admissions in the original complaint that led to dismissal. Bioenergy alleges that when the Court rectified this miscreant act by consolidating the new complaint into the existing action,

ecoNugenics then duped Bioenergy into filing a motion to dismiss the FAC to gain a roadmap from which to draft its SAC. Moreover, Bioenergy alleges, ecoNugenics continued to conceal the disingenuous nature of its revised factual allegations from the Court by redlining the SAC against the summarily dismissed FAC rather than against the original "operative" complaint. In its final act of bad faith, Bioenergy alleges, ecoNugenics opportunistically filed its motion to amend on the Monday before Thanksgiving so as to decimate Bioenergy's time to respond while initially refusing to grant Bioenergy a one-week extension to file its response.[6]

The objective description of ecoNugenics' conduct is accurate, and the inference of subjective bad faith that Bioenergy draws from the conduct is not unfair. But it is not the only inference capable of being drawn from these facts. At oral argument on the motion to amend, counsel for ecoNugenics offered the following explanation for his seemingly improper procedure. After the Court granted Bioenergy's motion to dismiss the original complaint against it,[7] counsel for ecoNugenics believed there was no longer a live action in which to file an amended complaint and therefore filed an entirely new action.[8] While the Court finds this explanation suspect, particularly for an experienced practitioner such as ecoNugenics' counsel (Judge Ericksen had not entered judgment in the case; her order expressly applied only to Bioenergy whose dismissal was expressly "without

---

[6] Curiously, Bioenergy does not directly argue that ecoNugenics' attempt to present different and inconsistent factual allegations is itself sufficient bad faith to warrant denial of the motion to amend.

[7] At that time, Bioenergy was the only defendant who had been served and who had appeared in this case.

[8] Counsel also asserted that he did not believe a motion to reconsider would have been appropriate because there was no newly discovered evidence and no manifest error of law. Therefore, he believed his only option was to file a new complaint as a new action.

prejudice"), it is not so absurd as to be rejected out of hand. It is plausible that counsel mistakenly but genuinely believed it was proper to file the FAC as a new action.

From this original negligence, many subsequent missteps can be plausibly explained without concluding counsel acted in bad faith. When the FAC was filed as a new action there was no motion to amend. Consequently, there was no requirement that the FAC be accompanied by a redlined version comparing it to the initial complaint. *Cf.* Local Rule 15.1 (requiring a redlined complaint be provided when a motion to amend is filed).

When the FAC was dismissed by the Court on its own motion (but after Bioenergy had already filed its motion to dismiss the FAC), ecoNugenics was left with the option to seek amendment as the proper procedure. Order, Dkt. No. 56. Counsel conferred with opposing counsel as required, and when opposing counsel refused to consent to the amendment, ecoNugenics' counsel prepared the motion to amend. During this process it is reasonable that ecoNugenics' counsel would review Bioenergy's now moot brief in support of its motion to dismiss the FAC. Thus, though handed an opportunity to revise its complaint yet again to take account of any alleged deficiencies in the FAC, it does not necessarily follow that this opportunity was the product of elaborate scheming as opposed to a fortuitous consequence of counsel's original procedural misstep.

Then, when ecoNugenics prepared its redlined version of the proposed SAC in accordance with Local Rule 15.1, it is plausible that counsel again, acting with a similar lack of attention to detail, used the FAC as the "operative" pleading against which to track changes in the SAC. Though the Court finds this explanation puzzling, it does not demand a finding of bad faith.

Finally, as regards counsel's opportunistic timing of his motion to amend and his initial refusal to grant Bioenergy the customary courtesy of an extension, counsel seeks refuge behind his need to obtain client approval. This of course does not explain the initial decision to file the motion on a date that unnecessarily inconvenienced opposing counsel. But the Rules do not require a party to file a motion on a date that avoids inconveniencing the opposing counsel. Though this Court has already admonished counsel regarding what it views as a lack of civility and common courtesy, it does not find this behavior sufficiently egregious in itself to justify denying the motion to amend on grounds of bad faith.

In sum, the Court is dubious of the subjective intent underlying counsel's conduct, and it well understands why Bioenergy draws an inference of bad faith. Even giving counsel the benefit of the doubt, the conduct at issue is inconsistent with the Rules. Nonetheless, the Court will not deny the motion to amend on the grounds of bad faith as ecoNugenics' explanation of its procedural mistakes is not implausible; again, the Court will indulge all plausible inferences in favor of finding benign motive. This indulgence, however, does not extend to the new substantive allegations that are put forth in the SAC, which directly conflict with ecoNugenics' original complaint. Because this aspect of bad faith is inextricably intertwined with the issue of futility, it is analyzed below.

**IV. Futility.**

Futility is a well-recognized basis for denying a proposed amendment. *See Foman*, 371 U.S. at 182. The test for futility is identical to the test that is applied when considering a motion to dismiss a complaint under Rule 12(b)(6). *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (denial of motion for leave to amend on the basis of futility means the court reached the legal conclusion the amended complaint could not withstand a Rule

12(b)(6) motion to dismiss). To survive a motion to dismiss, a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 848 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). Likewise, a proposed amended complaint that fails to state a plausible cause of action under the *Twombly* and *Iqbal* pleading standard will be denied as futile. *Id.* at 850-51.

ecoNugenics argues that the SAC, judged solely by looking at the face of that proposed complaint, pleads plausible claims for direct and indirect patent infringement. But this is true only because ecoNugenics deleted the admissions that led this Court to find ecoNugenics had failed to plead plausible claims of patent infringement. ecoNugenics cites no authority for the proposition that, in the circumstances here, the Court must "accept as true" the allegations in ecoNugenics' proposed SAC that contradict the admissions it made in its original complaint, and thereby deem the SAC "plausible on its face."

The Court must consider facts previously asserted by ecoNugenics, for "leave to amend is [only] warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colls.,* 655 F.3d 984, 995 (9th Cir. 2011) (internal quotation marks omitted); *see also Fields v. Colgate Palmolive Co.,* Civil No. 10-365, 2010 WL 5252537, at *5 (D.N.J. Dec. 15, 2010) (denying as futile the proposed amended complaint because plaintiff's assertions contradicted the admissions he made in his original complaint: plaintiff "cannot plead around the admissions" and thus "cannot construct any viable claim"); *Echols v. CSX Transp., Inc.,* Civil No. 3:16CV294,
14

2017 WL 2569734, at *6 (E.D. Va. June 13, 2017) (denying as futile and in bad faith the plaintiff's attempt "to amend his complaint to allege facts that are wholly contradictory to his initial Complaint so as to avoid having his suit barred by statute of limitations"); *Cadmus v. Williamson,* Civil No. 5:15-cv-45, 2016 WL 929279, at *19 (W.D. Va. Feb. 1, 2016) ("Facts in an amended complaint that are wholly inconsistent with facts alleged in the original complaint can be indicative of the plaintiff's bad faith and provide a basis for denying leave to amend. . . . [While] it is not always improper for a plaintiff to revise the alleged facts in an amended complaint[,] . . . [t]his does not mean . . . that a plaintiff may fraudulently alter the facts from one complaint to the next . . . .").

In this case ecoNugenics has changed, among other things, two critical factual admissions on which its original complaint foundered. First, it removed its admission that independent testing demonstrates Bioenergy's MCP lacked "the ability [as claimed by the patents in suit] to enter mammalian circulation and bind heavy metals and galectin-3 in the blood," which admission directly caused this Court to conclude the original complaint failed to plausibly allege infringement. *See* Order at 12, Dkt. No. 52. ecoNugenics cannot simply delete damaging admissions from its complaint to render its claims plausible. The Court finds this proposed amendment futile and in bad faith.

Second, ecoNugenics' proposed amendment alleges that Bioenergy "administers" MCP. The Court finds this amendment is similarly futile and in bad faith. In its original complaint ecoNugenics affirmatively alleged that Bioenergy did not administer MCP, that its customers administered the MCP to themselves. These individuals were said to directly infringe the patents in suit, whereas Bioenergy was merely alleged to indirectly infringe. As the Court concluded, this admission rendered any claim of direct infringement

15

by Bioenergy implausible, which in turn required dismissal of the indirect infringement allegations against Bioenergy. *See id.* at 13.

ecoNugenics omitted this admission from its FAC, instead alleging Bioenergy "directly infringes the claims of the asserted patents by administering . . . MCP to others . . . ." FAC ¶ 31, Dkt. No. 57. However, this change was not consistently reflected throughout the FAC, which continued to allege in various paragraphs that Bioenergy "represents its MCP can be administered to humans," "promotes its administration by others," and that Bioenergy's purchasers self-administer MCP. When, in response to the FAC, Bioenergy again moved to dismiss the complaint, ecoNugenics further "refined" this allegation. In its proposed SAC, ecoNugenics now alleges "administration may amount to no more than simply providing the composition – that is a proper understanding of the term 'administering' as it appears in the asserted patents herein. In general, the MCP provided or administered . . . [by Bioenergy] is provided in an amount . . . sufficient to achieve the recited relief . . . ." ecoNugenics' new assertion that Bioenergy "administers" MCP contradicts the admissions it made in its original complaint, and the Court finds this proposed amendment futile and in bad faith.[9]

The Court rejects ecoNugenics' argument that its proposed SAC is not futile because the new allegations, properly understood, do not contradict its original complaint; they merely seek to "clarify" allegations the Court misinterpreted. The new allegations do not clarify or even amplify the original admissions made by ecoNugenics, they flatly

---

[9] ecoNugenics also seeks to allege that Bioenergy "selects" patients (as required by the claims of the '329 and the '449 patents) by focusing its marketing and advertising on potential purchasers who may benefit from taking MCP. But those who actually purchase and who administer MCP to themselves perform the selection. The proposed SAC regarding the Administering and Selecting Patents is futile for this reason as well.

16

contradict the original complaint. They are a transparent attempt to remove dispositive admissions and replace them with different allegations that would survive a Rule 12 motion to dismiss.

The Court is also unpersuaded by ecoNugenics' argument that the new allegations regarding "administration" of MCP and its efficacy are inappropriate for Rule 12 dismissal because they relate to claim construction. ecoNugenics argues that, even if it now urges a different claim construction than it originally pursued, that is appropriately addressed only through claim construction and summary judgment. The Court disagrees. Though ecoNugenics' argument about "administering" MCP does implicate the meaning of words that appear in the claims of the patents in suit, its argument does not change the fact that it initially alleged that Bioenergy did not administer MCP and that its MCP could not bind to heavy metals and galectin-3 in the blood. Thus, even though "administer" appears in the claims of the patents, the allegation is unequivocally an admission of fact, albeit one that implicitly depends upon the meaning of a particular claim term.

Moreover, not all words used in a patent claim require construction by a court. Common English words used in a customary fashion often do not require interpretation or construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). Here the obvious and ordinary meaning of the word "administer" as used in the patents (and as ecoNugenics initially admitted) is "to introduce into or ingest" a medication. Nothing in the patent specifications or their

17

preferred embodiments hints at a different or special construction of the word "administer," particularly not the newly-proffered sense of "make available" or "provide," "market" or "sell." One representative example demonstrates the point. In the '329 patent, the specification provides at Column 6, lines 35-60:

> While 5-1,500 mg/kg/day remains an effective range, more effective MCP may be **administered** in a more preferred range of 10 mg/kg/day to 750 mg/kg/day. The MCPs of this invention may be **administered** over a prolonged period or time, as many disease conditions associated with inflammation and fibrotic complications are chronic in nature. Extended **administration** of MCP has not shown toxicity or presented issues of tolerance in any way. No cytopathic or toxicological complications are associated with the **administration** of MCP in the range either orally or intravenously.
> . . .
> MCPs . . . are suitable for oral or intravenous **administration**, . . . .

This usage is typical throughout the patients in suit.

What's more, if "administer" were interpreted to mean "provide to" or "market" MCP, the patents would effectively make MCP itself patentable, which ecoNugenics itself admits is not possible. Whether viewed as purely legal issue, a purely factual matter, or a mixed question of law and fact, ecoNugenics is bound by its original judicial admissions that Bioenergy does not administer MCP and its MCP cannot bind heavy metals or galactin-3 in blood. ecoNugenics cannot change the fundamental nature of its assertions to avoid dismissal. *See Fields*, 2014 WL 5252537, at *5 (amendment would be futile, as plaintiff "cannot construct any viable claim" because he "cannot contradict" and "cannot plead around" the admissions in his original complaint).

The Court finds that ecoNugenics' proposed amendments are in bad faith and futile and would not survive a Rule 12(b)(6) motion to dismiss. Accordingly, the Court denies the motion to amend.

18

## CONCLUSION

IT IS HEREBY ORDERED: Plaintiff's Motion to Amend Its Complaint [Dkt. No. 59] is DENIED.

Dated: January 10, 2019

                                            s/David T. Schultz
                                            DAVID T. SCHULTZ
                                            United States Magistrate Judge